UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CR-20031-BLOOM/ELFENBEIN(s)

UNITED STATES OF AMERICA

v.

T.H., a minor,

      Defendant.

                                   /

## MOTION FOR REVIEW AND REVOCATION OF ORDER OF RELEASE PURSUANT TO THE BAIL REFORM ACT

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files the instant motion (the "Motion") as to T.H. (the "Defendant") and respectfully requests a review and revocation of United States Magistrate Judge Edwin G. Torres's Order of Release ("Release Order"), previously entered in this matter pursuant to the provisions of Title 18, United States Code, Section 5034 of the Juvenile Delinquency Act ("JDA"). (ECF No. 24). The United States requests this review pursuant to the provisions of Title 18, United States Code, Sections 3142 and 3145(a)(1).

The United States respectfully submits that the Release Order should be reviewed and revoked because, once this matter transferred to adult prosecution, the JDA no longer applied. In adult status, the Defendant's detention or release should now be reviewed through the lens of the Bail Reform Act. And as more fully explained below, under the Bail Reform Act, the Defendant is a danger to others and should be held in pretrial detention. Alternatively, the transfer to adult status is a change in circumstance that recommends a review and revocation of the Release Order. In support of its Motion, the United States avers as follows:

## RELEVANT FACTUAL BACKGROUND

1.     On or about November 7, 2025, A.K., an 18-year-old female from Titusville, Florida, was found deceased in the cabin she shared with the Defendant (her stepsibling) and her half-sibling on a Carnival Cruise Lines' ship, *Horizon of the Seas*, while the ship was on the high seas en route to Miami, Florida. The subsequent investigation of A.K.'s death resulted in the instant prosecution against the Defendant, a 16-year-old male.

2.     Pursuant to the provisions of the JDA, 18 U.S.C. § 5031 *et. seq*., the United States Attorney for the Southern District of Florida first filed an Information on February 2, 2026, making allegations against the Defendant for one (1) count of Murder in the First Degree, in violation of 18 U.S.C. § 1111(a) (Count 1), and one (1) count of Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a)(1) (Count 2). (ECF No. 3).

3.     On February 3, 2026, the Defendant surrendered himself at the United States Attorney's Office in Miami, Florida, and was officially arrested. (ECF No. 11). On the same day, the Defendant had his initial appearance on the Information before Magistrate Judge Torres and pled not guilty to the allegations contained in the Information. *Id.* The Defendant also demanded discovery, and the magistrate court entered the Standard Discovery Order in this matter. (ECF Nos. 10, 11).[1]

---

[1] While the JDA does not discuss discovery, the Government—in anticipation of its request to transfer this matter to adult prosecution and to afford the Defendant due process—agreed to the entrance of the Standard Discovery Order. Therefore, on February 19, 2026, the Government provided its first response to the Standard Discovery Order to defense counsel, which included Rule 16 discovery, *Giglio* information, all existing FBI reports and Sentinel items, and additional advance *Jencks* materials not previously provided on February 4, 2026, before the JDA detention hearing in this matter. (ECF No. 30). The Government also provided Second and Third Responses to the Standing Discovery Order with additional materials on March 20, 2026, and April 7, 2026, respectively. (ECF Nos. 56, 57).

4.      Additionally, on February 6, 2026, a detention hearing was held, pursuant to 18 U.S.C. § 5034, upon the Government's request the Defendant be detained for dangerousness (the "JDA detention hearing"). (ECF Nos. 7, 22). The Defendant requested the magistrate court also conduct a probable cause hearing.[2]

5.      After the JDA detention hearing, Magistrate Judge Torres found there was probable cause for the alleged charges but denied the Government's request for detention. As a result, the magistrate court released the Defendant to the custody of a family member with various conditions[3] and entered the instant Release Order. (ECF No. 24). At the JDA detention hearing, Magistrate Judge Torres also stated the Government could ask to revisit the Defendant's release status should this Court transfer this matter to adult status/prosecution.[4]

6.      On February 26, 2026, this Court entered an Order transferring this case to adult prosecution upon motion of the Government and a written request of the Defendant (the "Transfer Order"). (ECF No. 37).

7.      Pursuant to the Transfer Order and 18 U.S.C. § 5032, the United States filed certifications from the juvenile clerk of courts of Miami-Dade and Brevard Counties on March 10, 2026. (ECF No. 42).

---

[2] Although the Defendant argued at the JDA detention hearing that the JDA proceedings were not criminal in nature, and even though JDA does not provide the right to a probable cause hearing, the Government did not object to the magistrate court deciding whether probable cause existed for the Information.

[3] As fully explained on pages 11-12, *infra*, the Defendant was not released on any type of bond. The magistrate court released the Defendant pursuant to the instant Release Order, which includes a series of conditions as a part of the Order.

[4] *See* footnote 17, *infra*.

8.      Furthermore, on March 10, 2026—12 days after the Court's Transfer Order—a federal grand jury in the Southern District of Florida issued a Superseding Indictment charging the Defendant with one count of Murder in the First Degree, in violation of 18 U.S.C. § 1111(a) (Count 1), and one count of Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a)(1) (Count 2). (ECF No. 40).

9.      On April 8, 2026, after a hearing, Magistrate Judge Torres found the proper certifications had been filed with the Court. Thus, Judge Torres ordered the transfer to adult prosecution be finalized in this matter and further unsealed the docket. As a result, on April 10, 2026, this matter was formally transferred to adult prosecution.[5] (ECF Nos. 53, 54, 55)

10.     Consequently, consistent with Magistrate Judge Torres's pronouncement and pursuant to 18 U.S.C. §§ 3142 and 3145(a)(1), the United States requests that the Release Order be reviewed and revoked.   Moreover, as more fully discussed below on page 13, *infra*, the Government also requests that a status conference regarding the scheduling of a hearing about this Motion be held.[6] [7]

---

[5] Although this Court issued the Transfer Order on February 26, 2026, "a juvenile shall not be transferred to adult prosecution…until…the clerk of the juvenile court has certified in writing that the juvenile has no prior record." 18 U.S.C. § 5032, ¶ 10 (2025). Therefore, arguably, the date on which the Defendant was transferred to adult prosecution is either, at the earliest, March 10, 2026 (when the Government filed the certifications), or at the latest, April 10, 2026 (when the Order finalizing the adult transfer was entered).

[6] After conferring with defense counsel, it is the Government's understanding that the parties believe the evidence presented at the JDA detention hearing was comprehensive. Thus, at this time neither party believes further testimony will be necessary.

[7] The parties agree the Defendant should remain under the terms of the Release Order pending the adjudication of this Motion.

**ANALYSIS AND MEMORANDUM OF LAW**

The Government requests a review and revocation of Magistrate Judge Torres's Release Order and for this matter to be set for a status conference to schedule a hearing regarding the instant Motion. As further detailed below, the current Release Order was issued pursuant to the provisions of the JDA, which no longer applies to the instant matter. As such, the Court should review the Release Order under the provisions of the Bail Reform Act and detain the Defendant. Moreover, the JDA is limited vis-à-vis the considerations a court should make in deciding whether to detain accused juveniles and does not provide courts with the ability to consider bonds in granting release. Thus, the transfer of this case to adult prosecution is a substantial change in circumstance, and a review and revocation of the current Release Order in light of the Bail Reform Act should be undertaken.

I.     **Legal Authority**

a.  This Court Has Jurisdiction to Conduct the Review and Revocation

To begin, this Court has jurisdiction to order and conduct a hearing to assess the appropriateness of pretrial detention under the Bail Reform Act. As more fully explained below, now that this case has transferred to adult prosecution, the provisions of the JDA have ceased to apply, and the Bail Reform Act now controls. Consequently, as the Defendant has never had a hearing pursuant to the Bail Reform Act, this Court should review his release now that this matter is in adult prosecution.

Second, the Court also has jurisdiction to review and potentially revoke the Release Order under 18 U.S.C. § 3145(a)(1). Section 3145(a)(1) states, in part,

> [i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a

5

Federal appellate court—

> (1)     the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.

(2025).[8] The Court reviews the magistrate court's order *de novo. See United States v. King*, 849 F.2d 485*, 491 (11th Cir. 1988) ("While the district court is always free to enter its own findings in writing and a written statement of reasons supporting pretrial detention, we hold that this is necessary only where: 1) the district court considers evidence which was *not* considered by the magistrate; or 2) the district court adopts the magistrate's recommendation that pretrial detention is necessary but finds that certain of the magistrate's underlying conclusions or factual findings are incorrect or unsupported by the evidence.").

Here, given these parameters, it is clear the Court has the jurisdiction to order and conduct the review of the Release Order. This matter is now in adult prosecution, and the question of the Defendant's pretrial detention or release is governed by the Bail Reform Act. Moreover, the Government is asking the court with original jurisdiction over the offense to review and revoke the Release Order. Finally, Magistrate Judge Torres acknowledged that the United States could seek a review of the Release Order once this matter transferred to adult status. The Government has filed the instant Motion on April 13, 2026, after this matter officially transferred to adult prosecution on April 10, 2026. Thus, the Motion is timely filed. Consequently, the Court has

---

[8] Arguably, the Court has the ability to review the Release Order under Local Magistrate Judge Rule 4.1(a)(2). However, the Government does not believe the Rule is the proper vehicle for the instant Motion as Rule 4.1(a)(2) prescribes the process for the appeal of a release order made pursuant to the Section 3142 of the Bail Reform Act. As more fully discussed below, the Release Order here was made pursuant to Section 5034 of the JDA, not the Bail Reform Act. Therefore, the Government believes Section 3145(a)(1) is the more appropriate vehicle.

jurisdiction to adjudicate this Motion.

## II.  The Release Order Should be Reviewed and Revoked

### a.  The Provisions of the JDA No Longer Apply in this Matter

First, a review or revocation of the Release Order is appropriate because this matter's transfer to adult prosecution means the provisions of the JDA—including Section 5034—no longer apply. The Defendant's detention or release is now subject to the provisions of the Bail Reform Act, and, as the magistrate court could not apply the provisions of the Bail Reform Act at the JDA detention hearing, a review and revocation of its order is needed.

When instituted, this matter was subject exclusively to the provisions of the JDA—the only vehicle by which a person under the age of 18 may be charged in federal court. Once proceedings have commenced against a juvenile under the JDA, Section 5034 provides the sole mechanism by which detention of the juvenile may be accomplished pre-disposition: the magistrate court "shall" release the juvenile "unless the magistrate judge determines, after hearing, at which the juvenile is represented by counsel, that the detention of such juvenile is required to secure his timely appearance before the appropriate court or to insure his safety and that of others." (2025).[9]

The JDA then provides two paths forward. First, should the matter proceed in delinquency, the district court must decide if the juvenile should be adjudged delinquent of the acts accused. Alternatively, should the necessary requirements exist, Section 5032 provides the process wherein a juvenile accused of an act of delinquency may be charged and prosecuted as an adult. The culmination of that process is the district court's review of the request to transfer to adult status

---

[9] The JDA does not specifically address the review of a magistrate judge's release or detention order prior to the dispositional hearing.

either after a hearing or waiver (discretionary transfer), or upon a showing the juvenile's prior record contains certain adjudged delinquencies (mandatory transfer). Only after the district court's review can an order transferring the juvenile's case to adult status/prosecution issue.

However, once a juvenile's case is transferred to adult status, the JDA is silent as to subsequent procedural events in the adult prosecution of that same juvenile, save the execution of the sentence.[10]  The reason is clear: once a juvenile's matter is transferred to adult status, their case is now subject to the provisions and punishments that apply to nearly any adult defendant facing a criminal indictment in federal court.[11]  Had Congress intended something different, the JDA would contain provisions regarding the adult prosecution of juvenile defendants.

Accordingly, once the Defendant's matter was transferred to adult prosecution, many of the provisions of the JDA no longer apply to him.[12]  For example, a transfer to adult prosecution means the Defendant is subject to adult criminal procedural rules, as found in the Federal Rules of

---

[10] Post-transfer, the JDA only discusses the incarceration of juveniles. Section 5039 affords that "[n]o juvenile committed, whether pursuant to an adjudication of delinquency **or conviction for an offense**, to the custody of the Attorney General may be placed or retained in an adult jail or correctional institution in which he has regular contact with [incarcerated] adults. . ." (emphasis added). Moreover, Section 5043 places limits on the solitary confinement of incarcerated juveniles, including those prosecuted as adults.

[11] Notwithstanding, applicable here is a notable deviation from this principle: juveniles, like the Defendant, may never have the death penalty imposed on them, even though murder in the first degree is a death-eligible offense. *See Roper v. Simmons*, 543 U.S. 551, 68, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding imposition of the death penalty on juvenile offenders is unconstitutional)).

[12] This includes many of the privacy protections afforded under the JDA, *see e.g., United States v. C.G.,* 736 F.2d 1474, 1477 (11th Cir. 1984) ("With the prosecution of a juvenile as an adult, several of the benefits and safeguards afforded by [18 U.S.C. § 5038] will be irretrievably lost.")).

Criminal Procedure.[13] Additionally, if found guilty of the crimes of which he is charged, the Defendant will be a convicted felon, not an adjudicated juvenile delinquent.[14] Moreover, the Court could also sentence the Defendant to the same terms of imprisonment as an adult, and he would not be entitled to release at the age of 21.[15] These changes are not inconsistent with the fact that the Defendant is also afforded the same rights as adults charged in federal court, such as the provisions outlined in the Speedy Trial Act and the right to be charged by indictment, amongst others.[16]

Here, the Defendant was initially accused via Information of acts of delinquency. Subsequently, however, this Court ordered this matter transferred to adult prosecution, and the Defendant has been indicted by a federal grand jury; thus, now the procedures set forth in the JDA no longer apply. Consequently, the provision of the JDA regarding the Defendant's release—Section 5034—ceases to apply.

    b. <u>As the Defendant is Now Subject to Adult Prosecution, the Bail Reform Act Now Controls.</u>

---

[13] For example, there is no constitutional or statutory right to jury trial in federal juvenile delinquency proceedings. *See United States v. Bent*, 702 F.2d 210, 212 (11th Cir. 1983); *see also United States v. Cuomo*, 525 F.2d 1285, 1292-93 (5th Cir. 1976). However, the Defendant has the right to a jury trial under Article III, Section 2 of the Constitution, now that this case has been transferred to adult prosecution.

[14] *See e.g., United States v. Brian N.*, 900 F.2d 218 (10th Cir. 1990) ("Under [the JDA], prosecution results in an adjudication of status—not a criminal conviction.")).

[15] *See e.g., United States v. Grant*, 9 F.4th 186, 190 (3d Cir. 2021) (finding a 60-year sentence for defendant charged initially under the JDA, and later transferred to adult prosecution, for homicide-related RICO offenses comported with the Eighth Amendment)).

[16] *See* page 4, ¶ 8, *supra*.

The transfer of the case to adult prosecution was a substantial event—a fact acknowledged by Magistrate Judge Torres.[17] Consequently, the provisions of the JDA no longer apply to the Defendant's release, and his post-transfer detention or release are subject to the provisions of the Bail Reform Act. And when viewed under the lens of the Bail Reform Act, it is clear a review and revocation of the Release Order is needed.

First, a review is appropriate because the issue of detention should be considered under the Bail Reform Act's clearer and more complete guidelines. The JDA gave the magistrate court slight guidance on the factors to be considered for release, and little caselaw exists on the subject—a fact acknowledged by the magistrate court and the parties at the JDA detention hearing. Accordingly, Magistrate Judge Torres considered only the scant criteria set forth in the plain language of Sections 5034 in deciding on detention; particularly, whether the Defendant would be a danger to himself or to others.[18]

But now that the JDA no longer applies post-transfer, a review of the Defendant's release should be conducted under the Bail Reform Act and its provisions. This includes consideration of

---

[17] Neither party was able to order a transcript of the JDA detention hearing before the filing of this Motion. However, the Government's notes from the hearing reflect Magistrate Judge Torres stated the Government could ask for reconsideration of the Release Order once the case was transferred to adult status because that would be the "turning point" of the case and merited review. The Government has ordered a transcript of the hearing on an expedited basis, which will be filed under seal with the Court, and it will more accurately reflect Judge Torres's exact remarks.

[18] Magistrate Judge Torres also seemed to consider Section 5035 in deciding against pretrial detention. However, at the JDA detention hearing the Government objected to his consideration of Section 5035, as: (1) Section 5035 solely addresses the responsibilities of the Attorney General, not the magistrate court, once detention has been ordered, and (2) the Government and United States Marshals Service had already coordinated, pre-hearing, with the Florida Department of Juvenile Justice to provide a facility that comported with all the requirements set forth in Section 5035 should detention have been ordered.

all the factors set forth in 18 U.S.C. § 3142(g) in determining whether pretrial detention is appropriate. And when viewed through Section 3142(g)'s factors, the evidence presented at the JDA detention hearing lays bare there is clear and convincing evidence that the Defendant is a danger to others under the standards set forth in the Bail Reform Act. That evidence demonstrated the offense conduct the Defendant engaged in involved the most serious, egregious, and violative crimes one person can inflict upon another. He committed these crimes against a victim with whom he had no apparent relational strife, and whom he was being raised to view as a sibling. Furthermore, he carried out these crimes without any warning he could commit such atrocious acts, and despite an apparent supportive family environment. Finally, the Defendant currently lives in a home where minor children reside. Consequently, there is no assurance any court could ever have that any conditions, or combination of conditions, would be sufficient to prevent the Defendant from being a danger to others. Thus, the Defendant should be detained.

Nonetheless, even if the Court ultimately disagrees with the Government regarding pretrial detention, applying the provisions of the Bail Reform Act would provide the Court with the benefit of considering other forms or manners of release; namely, personal recognizance bonds and secured and unsecured appearance bonds. After the JDA detention hearing, the magistrate court issued its Release Order without any kind of bond. However, this decision was mostly due to Section 5034's limited wording. As the Government itself stated at the JDA detention hearing, the plain language of Section 5034 simply did not provide authority for the parties to request, nor for the magistrate court to impose, some sort of bond in lieu of detention.[19] Thus, the magistrate court

---

[19] *See United States v. Fisher,* 289 F.3d 1329, 1338 (11th Cir. 2002) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry. The plain language is presumed to express congressional intent and will control a court's interpretation.") (citing *American Tobacco*

simply did not have the option of considering bonds under the JDA.

However, now that the provisions of the Bail Reform Act control, bonds are now available for this Court's consideration, and the Court should consider them for two reasons. First, in light of the factors outlined in Section 3142(g), the Court could decide a bond with conditions would better address the concerns and circumstances involved in releasing the Defendant. Second, given the substantial change in circumstances resulting from the adult transfer, the Court should consider whether some type of bond should be fashioned to better address the new risks and consequences inherent in the Defendant's adult prosecution that did not exist when the case was in juvenile status. As previously discussed, the Defendant's exposure to punishment has changed substantially. In addition, he now faces the very real possibility he could be a convicted felon. For these additional reasons, the Court should review the Release Order.[20]

## THE GOVERNMENT'S REQUEST

The Government therefore respectfully requests this Court order and conduct a review or revocation of the Release Order under the provisions of the Bail Reform Act. The Government further requests this Court set this matter for a status conference in order to schedule a hearing

---

*Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)).

[20] The instant Release Order was issued when the Defendant faced vastly different consequences than he faces now—ones that could incentivize decisions by the Defendant that were not at play when the Release Order was issued. Under the Release Order, there is little recourse should the Defendant or his custodial family member now fail to comply with the conditions of the order. Because the Defendant was not released under a bond, any violation of the conditions of the Release Order would fail to result in a consequence on par with such a violation: the revocation of the bond or forfeiture of monies. Instead, the Defendant and his family member would be subject to contempt of court proceedings—a potentially punitive and more protracted process for violating a court's order than the revocation of the bond or forfeiture of monies.

regarding the instant motion. This status conference is necessary for the Government to coordinate the attendance of the case agents, and for the Defendant to coordinate his travel to the Southern District of Florida with his attorneys and custodial family member, for any subsequent hearing on this Motion.[21]

## CONFERRAL WITH DEFENSE COUNSEL

In accordance with Local Rule 88.9, the Government has conferred with opposing counsel about this Motion. Assistant Public Defenders Eric Cohen, Abigail Becker, and Even Kuhl have stated their position as follows:

> If the Court is inclined to grant the government's request for a status conference, counsel for Minor T.H. request that this matter be referred to Magistrate Judge Torres to conduct a consolidated arraignment and status conference and then to schedule a hearing to determine whether T.H. should continue on release with appropriate conditions or be detained pending resolution of the instant case. As Magistrate Judge Torres presided over the initial bond hearing here and set the current conditions of release, he is familiar with the facts supporting the government's request for detention. The parties therefore anticipate that little, if any, additional evidence will need to be presented at that hearing. The parties agree that T.H. should remain at liberty pending Magistrate Judge Torres' decision concerning release.

*Email from AFPD Eric Cohen to AUSA Alejandra López* (February 26, 2026).

## CONCLUSION

WHEREFORE, the Government respectfully requests that the Court grant the instant Motion and set a status conference to schedule a subsequent hearing on this Motion.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

---

[21] Since the federal grand jury issued the Superseding Indictment in this matter recently, the Defendant also needs to be arraigned on the Superseding Indictment.

13

BY:    /s/ *Alejandra L. López*
            Alejandra L. López
            Assistant United States Attorney
            Florida Bar No. 37132
            99 N. E. 4th Street
            Miami, Florida 33132-2111
            Telephone: (305) 961-9241
            Email: Alejandra.Lopez@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the Court, which caused the same to be served on counsel for T.H., AFPDs Eric Cohen, Abigail Becker, and Evan Kuhl, via email.

            /s/ *Alejandra L. López*
            Alejandra López
            Assistant United States Attorney