**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 26-CR-20031-BLOOM

UNITED STATES OF AMERICA,

v.

T.H., a minor,

      *Defendant.*

_____/

### *ORDER GRANTING THE GOVERNMENT'S MOTION*
### *FOR REVIEW OF THE RELEASE ORDER AND ORDERING DETENTION*

The pending motion [D.E. 58] was referred for disposition and raises two questions. The first is whether, once a juvenile's prosecution is transferred to adult status under 18 U.S.C. § 5032, the Bail Reform Act (not the Juvenile Delinquency Act) governs whether he is detained or released pending trial. The second is whether, on the record here, the Government has shown by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.

The parties briefed these issues and an extensive hearing was held at which counsel argued their respective positions and they incorporated the existing evidentiary record developed at the initial detention hearing held for a juvenile defendant on February 6, 2026.

After thoroughly reviewing this case once again now that Defendant has been transferred to adult status under section 5032, the Court is bound to grant the Government's motion in its entirety. The Court now finds that Defendant should be held going forward in the custody of the U.S. Marshal pending his trial in the case. The Court rests that conclusion on dangerousness alone, as the Court finds that the original conditions of release adequately assure the Defendant's appearance at trial. But the more difficult issue relates to the second aspect of the detention motion that relates to danger to the community. The danger posed by the conduct charged here (the alleged first-degree murder and aggravated sexual abuse of a young woman and step-sister of the Defendant while they were in confined quarters of a ship at sea) is sufficient by itself to require detention. A now-decreed adult defendant charged on probable cause with deliberately taking a human life, and sexually assaulting his victim in the course of doing so, presents a danger to himself and to others that no curfew, monitor, or custodial placement can be trusted to contain. The Bail Reform Act strongly counsels in favor of detention to assure the safety of the community and this case presents no material exception to that principle. And though the current custodians of the Defendant have fully complied with the conditions of the Court's original release order, and have managed and housed the Defendant as well as anyone could expect, the Court is bound to apply the law that now governs this case and require that the Defendant be transferred to the custody of the U.S. Marshal going forward.

## I. BACKGOUND

On November 7, 2025, A.K., an eighteen-year-old young woman, was found dead in the cabin she shared with the Defendant, her stepsibling, aboard a cruise ship on the high seas, bound for Miami. The Medical Examiner concluded that she had been sexually assaulted and then asphyxiated.  The Defendant, now only sixteen years old, was ultimately charged with committing that horrible crime and trying to cover it up. Because he was under eighteen, the only federal vehicle to charge him under U.S. maritime jurisdiction was through the Juvenile Delinquency Act. The United States proceeded by Information on February 2, 2026, alleging first-degree murder under 18 U.S.C. § 1111(a), and aggravated sexual abuse under 18 U.S.C. § 2241(a)(1).

On February 6, 2026, the Court held a detention hearing under 18 U.S.C. § 5034. The Court found probable cause for the charged conduct but, given the presumption against holding a juvenile without bail, declined to detain the Defendant and released him to the custody of a close family member under strict conditions. That release issued under § 5034, the Juvenile Delinquency Act's sole pre-disposition detention provision, which directs the Court to release a juvenile unless detention is required to secure his appearance or to ensure his safety or that of others. The Court entered no formal bond because § 5034 does not provide for one, opting instead for entry of an Order of release conditions. [D.E. 24].

The case then changed character. On February 26, 2026, the District Court ordered the matter transferred to adult prosecution on the Government's motion and

the Defendant's lack of opposition. The required certifications were filed and a federal grand jury then returned a Superseding Indictment on March 10, 2026. On April 10, 2026, the transfer to adult prosecution was finalized and the docket unsealed. [D.E. 37].

The Government filed the pending motion on April 13, 2026, asking the Court to review the Release Order under the Bail Reform Act and to order Defendant detained. Following the referral of the motion, on May 27, 2026, the Court held a formal detention hearing now under the auspices of 18 U.S.C. § 3142(f). At that hearing counsel for Defendant opted not to introduce any new evidence in opposition to the Government's motion, and the Government as well declined to introduce new evidence beyond the proffers and evidence presented at the February 6, 2026 hearing. The findings below are based on the evidence submitted at that hearing and the entire record.

## II.  ANALYSIS

Section 3145(a)(1) provides that when "a person is ordered released by a magistrate judge," the Government "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). The defendant was ordered released by the undersigned Magistrate Judge. The Government moved for review of that Order for the the same offense but now for a now-adult defendant.

Because the existing Release Order issued under the Juvenile Delinquency Act and not under § 3142, this is the first time the Bail Reform Act's machinery has been

invoked at all. The Court's authority to review the original release Order is well established and not really in dispute.

### A. *The Juvenile Delinquency Act No Longer Governs*

The Juvenile Delinquency Act is a self-contained regime for the disposition of juveniles. It tells the Court how to detain or release a juvenile before disposition, § 5034; how to adjudicate delinquency; and how, under § 5032, to transfer a juvenile out of that regime and into adult prosecution. What the Act does not do is follow the defendant across that line. Once a case is transferred to adult status, the Act falls silent as to the procedures of the ensuing adult prosecution, addressing thereafter only the conditions of a juvenile's eventual incarceration. *See* 18 U.S.C. §§ 5039, 5043.

That silence reflects Congress's statutory design. When a juvenile is transferred, his case becomes subject to the provisions and punishments that apply to adult defendants in federal court. This Defendant now stands charged by indictment, not information. He may be entitled to a jury trial under Article III. He is subject to the Federal Rules of Criminal Procedure and the Speedy Trial Act. If convicted, he will be a felon, not an adjudicated delinquent, and may be sentenced as an adult without the age-21 ceiling that applies for juvenile disposition. So the transfer to adult status has real consequences.

If every other incident of adult prosecution attaches on transfer, the provision governing pretrial release cannot be the lone exception that does not. Section 5034 speaks to "the juvenile," and it presupposes a juvenile proceeding. The defendant is no longer in one. To hold that § 5034 continues to govern would be to graft a single

juvenile provision onto an otherwise-adult prosecution, precisely the hybrid Congress did not create. Upon transfer, § 5034 ceased to govern, and the Bail Reform Act assumed control of the question of detention or release.

### B. *Application of Section 3142 Factors*

The Bail Reform Act permits pretrial detention, but only on a predicate showing and only after a hearing. The Court must first find the case eligible for a detention hearing under § 3142(f). It is. The first-degree murder charge is a "crime of violence," § 3142(f)(1)(A), and it is an offense "for which the maximum sentence is life imprisonment or death," § 3142(f)(1)(B). The sexual assault of Defendant's step-sister is also a crime of violence, so Defendant is eligible for detention for either offense under the Act.

On the merits, the governing standard is purposefully exacting. *See United States v. Salerno*, 481 U.S. 739, 750-51 (1987) ("[the individual's strong interest in liberty] may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society. . . . Under the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination."). To detain on dangerousness grounds, the Court must find by clear and convincing evidence that "no condition or combination of conditions will reasonably assure … the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B); see *id.* § 3142(e)(1). That burden rests on the Government and does not shift. *See United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). The Court does

not apply the rebuttable presumption of § 3142(e)(3). That presumption attaches only to the enumerated offenses listed there. While an offense "involving a minor victim" under § 2241 is among them, § 3142(e)(3)(E), the victim here was eighteen at the time of the assault and murder. The Court therefore places no reliance on any presumption and holds the Government to its full burden of proof.

In carrying that burden, the Court weighs the four factors Congress prescribed: (1) the nature and circumstances of the offense charged, including whether it is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community posed by release. 18 U.S.C. § 3142(g); *see United States v. Quartermaine*, 913 F.2d 910, 916-17 (11th Cir. 1990). No single factor is dispositive in the abstract, but the factors do not all carry equal weight in every case. The inquiry is "flexible" and "fact-intensive," and "the weight given to each factor will inevitably vary from case to case." *United States v. Zhang*, 55 F.4th 141, 149–50 (2d Cir. 2022).

### C.   *The Nature and Circumstances of the Offense Weigh Heavily in Favor of Detention*

The first § 3142(g) factor does the most work in this case, and it points decisively toward detention. The defendant is charged with first-degree murder and aggravated sexual abuse. Murder is not merely a serious crime; it is the gravest crime, and it is one that "by its nature involves violence and bespeaks danger to others." *Zhang*, 55 F.4th at 149. In *Zhang*, the Second Circuit held that a court considering a murder charge may properly "focus on the fact that the charged offense involved murder," and that this fact "weigh[s] substantially in favor of a finding of

future dangerousness." *Id.* The same is true here, and more so: the murder is alleged to have followed from a brutal sexual assault, and to have been committed against a member of the defendant's own household in a setting from which the victim could not escape.

Indeed, we have two alleged grave crimes here. The forcible sexual assault by itself would be enough to find that release on bond posed too heavy a risk for the community. Had Defendant only been charged with that serious offense when he was 18 or older, he would have been likely detained on that basis alone. The level of depravity and psychopathy involved in the commission of that brutal offense would be too hard for most jurists to ignore.

This is not to convict the defendant in advance. The presumption of innocence remains fully intact. But "that does not mean … that the charged conduct may not be considered in assessing [a defendant's] dangerousness to the community." *United States v. Robertson*, 852 F. App'x 331, 339 (10th Cir. 2021). To the contrary, "the seriousness and violent nature of th[e] charge, as well as the strong evidence to support it, can be considered in assessing . . . danger to the community." *Id.* Congress itself singled out crimes of violence and offenses carrying the most severe penalties as the paradigmatic cases in which detention may be required to protect the public. § 3142(f)(1)(A)–(B). The conduct charged here sits at the center of that category.

The point is not that the gravity of an accusation, standing alone and without the benefit of a full-fledged trial, can ever substitute for the Government's burden. It is that where the charged conduct is a sexual assault followed by a violent killing

supported by probable cause, the nature of the offense is entitled to predominant weight, and it can carry a dangerousness finding when the remaining factors do not pull persuasively the other way. *Zhang* so held on facts less aggravated than these. The Court reaches the same conclusion here.

The second factor confirms the first. The Court has already found probable cause for the charged conduct at the February 6 hearing, and the grand jury's Superseding Indictment independently establishes probable cause to believe the defendant committed the offenses. As the Second Circuit explained, "the more strongly the evidence indicate[s] that the defendant committed the murder, the more likely he poses a danger to the community if released on bail." *Zhang*, 55 F.4th at 149.

The strength of the evidence here points strongly in favor of detention. Focusing just on the sexual assault charge, the Government's case for a forcible rape is beyond clear and convincing. Indeed it suggests a level of psychopathy and lack of remorse that by itself raises a serious concern that Defendant can snap at any time, despite the well-meaning and serious efforts of his caretakers to make sure that does not happen. And in this case that does not just mean a danger to others; it can also take into account a danger to himself based on the seriousness of the case and the closer in time that we get to trial. So even though the Court finds that its original release Order was the correct decision at the time, the matter can and should be reevaluated as circumstances warrant. As the Court explained at the February 6th hearing, "[o]bviously that changes once the defendant's status is changed to an adult,

and I think that really is the turning point in the case and merits reconsideration at that point. But for now, while the defendant is a juvenile, because I have a custodian acting, in effect, as a quasi foster home, because this is an individual who is not an immediate parent but he is a family member who is willing to house the defendant, I think release to his custody with conditions are appropriate." [D.E. 72 at 138].

### D.   *The Defendant's History and Characteristics Do* *Not Overcome the Danger*

The defendant's strongest arguments focus on the third factor. He is only sixteen years old. He has no prior record of any kind. He surrendered voluntarily. And he has, without challenge, complied with the conditions of his release since February. Plus the Government has not presented any evidence from any other family member or third party that urged pretrial detention or presented any tangible evidence to show Defendant's violation of the Order of Release. These are persuasive considerations, and in many cases they would weigh heavily toward release.

But they cannot bear the weight the defense places on them here. Youth and an unblemished record are mitigating in the ordinary case precisely because they make serious violence less likely; they lose much of that force when the very conduct charged is a deliberate killing accompanied by sexual assault. The Court agrees with the thrust of the Government's position that the alleged conduct came "without any warning" and "despite an apparent supportive family environment" is telling: a clean history is reassuring only if it predicts future conduct, and an offense of this gravity allegedly committed without antecedent warning signs undermines the predictive comfort that a clean record usually provides. Compliance with conditions for a period

of months, while the most serious charges were pending and the defendant was on notice that his liberty depended on good behavior, is likewise of limited probative value as to how he would behave over the longer and more uncertain road to trial. The history-and-characteristics factor is, on this record, neutral at best. It does not offset the danger the first two factors establish.

The fourth factor asks the ultimate question, and on this record the correct answer now is that no set of conditions will reasonably assure the community's safety. The Government has identified, and the Court has independently considered, the full arsenal the Bail Reform Act makes available: third-party custody, location monitoring, home detention, curfews, and contact prohibitions. The Court has taken time to consider whether one or all of these alternatives would reasonably protect against the danger the charged conduct reveals. To date they have but they may not going forward.

The defendant is alleged to have killed and sexually assaulted a member of his own household, in a private living space, against a person who trusted him enough to share it. That is the kind of danger that conditions premised on supervision and location are least able to address, because the harm charged did not require flight, opportunity created by absence of monitoring, or contact with strangers. The Government's point that the defendant currently resides in a home where minor children live underscores the concern. The natural response, removing him from contact with vulnerable household members, points to detention, not a condition short of it. But even if we credit the fact that to date Defendant has not been accused of

endangering his minor family members while on pretrial release, again the harm that we are also considering is potential harm to himself as well as others the closer we get to trial.

Electronic monitoring and home confinement, moreover, "at best elaborately replicate a detention facility without the confidence of security such a facility instills," *United States v. Millan,* 4 F.3d 1038, 1049 (2d Cir. 1993), and their efficacy depends on the defendant's own willingness to obey. *United States v. Patriarca*, 948 F.2d 789, 793-94 (1st Cir. 1991). For a defendant charged with crimes of this gravity, the community's safety cannot be left "largely to the word" of the defendant that he will comply. *Millan,* 4 F.3d at 1049. Viewing all of the § 3142(g) factors together—as the Court must—the conclusion now follows that "no conditions of release will reasonably assure the safety of the community." *Zhang*, 55 F.4th at 150. The Government has now carried its burden by clear and convincing evidence.

And, in particular, the concern exists that Defendant could make another very wrong decision the closer the trial gets. He has now been successfully on pretrial release for months, but the trial is now set for September. In the meantime, the level of mental health care he has been receiving may not be commensurate with the risk that he continues to pose while on pretrial release. The Court will assure, in consideration of this Order, that adequate mental health counseling be made available for Defendant as he now faces the next stage of the case and inches closer to trial.

### III.  CONCLUSION

The Court holds that, upon the transfer of this prosecution to adult status, 18 U.S.C. § 5034 ceased to govern the defendant's pretrial release; that the Bail Reform Act now controls; and that the Government has established, by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of the community going forward. The Government's Motion for Review is **GRANTED**, the Release Order entered under § 5034 is **VACATED**, and the Defendant is **ORDERED DETAINED** pending trial pursuant to 18 U.S.C. § 3142(e).

Pursuant to 18 U.S.C. § 3142(i), the Court Orders as follows:

1.      Defendant's current custodian shall deliver Defendant to the custody of the U.S. Marshal. Defendant shall be first delivered to the custody of the U.S. Marshal at Sam Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida. at 9:00 a.m., June 15, 2026. The Marshal has been advised to be prepared to take custody of the minor Defendant at that time.

2.      The U.S. Marshall shall immediately deliver Defendant to the custody of the Citrus County Jail that is currently approved to house juvenile inmates for the U.S. Marshal. At that facility, Defendant will be examined as soon as practicable for a mental health evaluation. Defendant shall be afforded visitation with family members as well as internet access for that purpose. Defendant shall also be afforded contact with counsel when requested.

3.     The U.S. Marshal shall then transfer custody of Defendant, as soon as practicable but no later than July 10, 2026, of Defendant to the Southern District of Florida, where Defendant shall be housed at the approved juvenile facility for the U.S. Marshal at Miami Dade County Metro-West Detention Center, 13850 N.W. 41 Street, Miami, Florida, for the duration of the pretrial and trial phases of the case. The U.S. Marshal and the Attorney General shall ensure continued opportunity for private consultation with counsel at that facility, that Defendant be housed only with juveniles in a secure environment at the facility, that he have regular internet access for communication with family outside the District, and that he be presented for appearances in connection with court proceedings. Additionally, Defendant shall be regularly visited with appropriate mental health professionals for continued evaluation and/or treatment as prescribed to be necessary.

4.     All further matters related to the care and custody of Defendant shall be presented to the District Judge for disposition.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of June, 2026.

EDWIN G. TORRES
United States Magistrate Judge